(No. 12880.—Reversed and remanded.)

THE BRISTOL & GALE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CATHERINE JOHNSON, Admx. Defendant in Error.)

*Opinion filed February 18, 1920—Rehearing denied April 7, 1920.*

1. WORKMEN'S COMPENSATION—*what to be considered in determining whether a person is an independent contractor.* Each case must depend upon its own facts as to whether one who works for another is an employee or an independent contractor, but the most important element to be considered is the right to control the manner of doing the work, although the mode of payment and the right to terminate the performance of the work at any time by discharging the worker are also important elements.

2. SAME—*when teamster engaged to haul freight is not an independent contractor.* A teamster who is engaged to haul freight with his own horse and wagon is not an independent contractor, where he is employed continuously by the same employer, is paid a fixed sum per week, is required to report for duty every day or send a substitute, gives all his time to the work, and where there is nothing in his contract or in the conduct of the work that indicates that his employer has surrendered the right to control any part of the details of the work.

3. SAME—*question whether employer is under act must be raised affirmatively.* An employer claiming he is not under the Compensation act must raise such question affirmatively, not only before the Industrial Commission but before the circuit court.

4. SAME—*circuit court cannot enter money judgment for award and order execution.* The circuit court in confirming an award by the Industrial Commission cannot enter a money judgment and order execution to issue.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

PHELPS & BALLAS, for plaintiff in error.

WILLIAM N. BRADY, and IRVING E. READ, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an application by Catherine Johnson, administratrix of the estate of George Johnson, deceased, before the Industrial Commission of Illinois for an award for the death of her husband, which it is alleged occurred while he was working for the Bristol & Gale Company, plaintiff in error. The Industrial Commission entered an award in favor of the administratrix, and on review the circuit court of Cook county sustained the award, certifying that the case was one proper to be reviewed by this court, and it has been brought here by writ of error.

Plaintiff in error, the Bristol & Gale Company, a corporation, had at the time of the injury and death of the deceased, January 29, 1916, and for years prior thereto, dealt in farm machinery at its place of business, 156 Carroll avenue, Chicago, Illinois. The company was lessee of the entire building, consisting of five stories and basement, used in its business. The different machinery was shipped to the company in parts and re-sold and re-shipped by it in the same condition as received. No manufacturing or assembling was done by the company. There were two departments to the business: the shipping department, on the first floor, and the office, on the second floor. The company employed five or six men about its place of business and had several salesmen on the road. There was an elevator in the building, operated by electricity, which was used to move the farm machinery from one floor to the other, the elevator being the only power-driven machinery used on the premises. Two wheel trucks were used to move the farm implements about on the different floors and in and out of the elevator. A platform extended out from the front of the building on a level with the first floor, which was used as a shipping platform to load and unload freight thereon. George Johnson, the deceased, owned a horse and wagon. He, with his horse and wagon, had been engaged by plain-

292 — 2

tiff in error for several years prior to the accident to haul freight between its place of business and the various freight houses and terminals in Chicago, being paid for his services and those of his horse and wagon $22.50 a week. His wagon was kept busy the entire year in doing the hauling of plaintiff in error. It had painted on its sides, "Bristol & Gale Company—Farm Machinery," and across the back of the seat, "George Johnson, Express." The agreement between Johnson and plaintiff in error was that a man was to report with a horse and wagon at its place of business every day at about eight o'clock in the morning. If the usual wagon was out of repair another wagon was used. If Johnson was sick or away on a vacation he was to supply a substitute driver. Johnson's wife ran an independent express business by herself, using other wagons and horses, and frequently when plaintiff in error's business required more hauling than Johnson could attend to, it hired from Mrs. Johnson horses and wagons to assist in doing the business and paid Mrs. Johnson direct, rather than making any arrangements as to this extra help with Johnson himself. A weekly check for the regular wagon used by Johnson was made payable to him and the checks for the extra horses and wagons hired of Mrs. Johnson were made payable to her. She kept wagons and did a general express business on Grand avenue, in Chicago. Johnson fed his own horse and had him shod and kept the wagon in repair. He had nothing to do with operating the elevator or moving the farm implements about in the building on Carroll avenue. The men working inside brought the shipments from the building onto the shipping platform and handed them to Johnson, who loaded them onto his wagon. The freight that he brought to the place of business from the railroads or terminals he unloaded from his wagon with the assistance of the company's men, and the men then moved it into the building. His orders were given to him by the shipping clerk of plaintiff in error, who gave him his loads and also

gave him the freight bills and money to pay the freight on goods coming to the warehouse. His quitting time at night varied. Usually he was given a load at the warehouse or directions to pick one up elsewhere, and unless he had time to pick it up that night he did not come back. He made his delivery or got his load the next day if it was too late to finish up that night. He worked until between five and six o'clock each day. During the day the shipping clerk knew where he had gone and when he was expected back. At his home he received directions over the telephone to pick up things on his way down in the morning. If he was not on time at his work the shipping clerk would call up to find out what delayed him. He worked every day in the year, except when ill or away on a vacation. He did no other work than that which he did for plaintiff in error and drove no wagon but the one lettered with plaintiff in error's name and business. He had a regular vacation and received gifts at Thanksgiving and Christmas as did the other employees of plaintiff in error. All the evidence as to the hiring of the horses and wagons from Mrs. Johnson and the way she was paid was admitted over the objection of counsel for defendant in error.

On the morning of the accident which caused Johnson's death he arrived at plaintiff in error's place of business about the usual time. A shipment of farm implements was loaded on his wagon for delivery to the Wabash railroad on its team track near Fourteenth street, on Plymouth court, and south of the Polk street station. A bill of lading in triplicate and a shipping order were delivered to him when he started away. Plaintiff in error's place of business is about a mile and a half from the Wabash team track. Johnson's ordinary route, as we understand the record, would be to drive to the Polk street depot, then south as far as Taylor street, then east on Taylor street across the railroad tracks leading into the Polk street station to either Dearborn street or Plymouth court, then south to Twelfth street,

then a little west under the Twelfth street viaduct to the Wabash scale shanty to be weighed, then south along the Wabash team track to the Wabash car in which he wanted his load placed. After driving part of this way he left his wagon and went to the Wabash scale house for information as to the location of the freight car and then started back on foot west across the Western Indiana tracks towards his horse and wagon and was struck by a Wabash railroad engine backing south over the Western Indiana railroad tracks and sustained injuries which caused his death almost immediately. The evidence tends to show that the Bristol & Gale Company had neither elected nor rejected the Workmen's Compensation act.

Counsel for plaintiff in error earnestly insist that the deceased was an independent contractor and not an employee of the Bristol & Gale Company within the terms of the Workmen's Compensation act, and that therefore the applicant was not entitled to compensation under the act. Under the proof in this record we think that the evidence as to the teams owned, operated and controlled by Johnson's wife has no real bearing on the question whether Johnson was an independent contractor or an employee of plaintiff in error. The evidence, we think, is clear that the deceased was in no way connected with the ownership of the teams of Mrs. Johnson at the time they were employed by plaintiff in error or at any other time. He had absolutely no control or interest in the earnings of said teams. They were hired from Mrs. Johnson direct and paid for by check to her order. The drivers of those teams were hired by Mrs. Johnson, and her husband in no way controlled their operation.

There is a great amount of discussion in the books as to whether a person is an independent contractor or an employee. In the decisions and lengthy notes in *Richmond* v. *Sitterding,* 65 L. R. A. (Va.) 445, *Messmer* v. *Bell & Coggeshall Co.* 19 Ann. Cas. (Ky.) 1, and *Pace* v. *Appa-*

*noose County,* 17 Neg. & Comp. Cas. Ann. (Iowa,) 682, may be found an abundance of authority on the subject. The numerous definitions of an independent contractor given by the authorities are not essentially different. Among others are the following: "An independent contractor is one who renders service to another in the course of an independent occupation, representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished." (*Messmer case, supra,* note on p. 4.) Again: "An independent contractor is one who undertakes to produce a given result, but so that in the actual execution of the work he is not under the order or control of the person for whom he does it and may use his own discretion in things not specified." (*Gay* v. *Roanoke Railroad and Lumber Co.* 148 N. C. 336.) Also: "One who contracts to do a specific piece of work, furnishing his own assistants and executing the work either entirely in accordance with his own ideas or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is clearly a contractor and not a servant." *Hale* v. *Johnson,* 80 Ill. 185.

The right to control the work contracted for is an important test in determining whether the employee is an independent contractor or a mere servant, and it may be stated generally that if the employee is under the control of the employer he is a servant, but if in the performance of the work he is not under the control of the employer he is an independent contractor. (*Messmer case, supra,* note on p. 7.) This, however, is not the only thing that should be taken into consideration. The fact that an employer reserves the right to control the scope of the work and to make alterations therein does not necessarily make the employee a mere servant. (*Messmer case,* note on p. 16.) The fact that the employer may at any time terminate the performance of the work by discharging the employee is of considerable weight

as tending to show that the employee is not an independent contractor. (*Messmer case,* note on p. 18.) The fact that an employee by his contract with his employer is bound to furnish the materials or tools with which the work shall be done affords but little light on the question of his independence, but such fact has in some cases been considered as tending to show independence. (*Messmer case,* note on p. 19.) The mode of payment for the work to be done is an important element to be considered in determining whether the employee is an independent contractor but is not controlling. (*Messmer case,* note on p. 19.)

It is impossible to lay down a hard and fast general rule or state definite facts by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. "Each case must depend on its own facts. Ordinarily, no one feature of the relation is determinative but all must be considered together." (1 Honnold on Workmen's Compensation, sec. 66.) However, in this State it has been held, and in line with the weight of authority, that the right to control the manner of doing the work is the principal consideration which determines whether the worker is an employee or an independent contractor. (*Decatur Railway and Light Co.* v. *Industrial Board,* 276 Ill. 472.) The test of relationship is the right to control. It is not the fact of actual interference with the control but the right to interfere that makes the difference between an independent contractor and a servant or agent. (*Tuttle* v. *Embury-Martin Lumber Co.* 192 Mich. 385.) A few cases will illustrate how in different jurisdictions these principles have been applied.

A person engaged in the business of teaming and grading who undertakes to furnish a railroad contractor, for an indefinite period, with teams and drivers for use on a specified work, at a stipulated sum per day for each team, wagon and driver, is not an employee under the Work-

men's Compensation act.  *Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807.

A man who had contracted with the harbor commissioners to supply a yawl and a crew of four men for pilotage purposes was drowned while putting a pilot on board a vessel.  It was held that he was an independent contractor. *Walsh* v. *Waterford Harbor Comrs.* 7 B. W. C. C. (Ireland) 960.

A man was engaged by a firm of timber merchants to bring his horse and drag logs of timber from the side of a ship which was being unloaded in the harbor, to a place where the logs were stored.  He received a certain sum per day for himself and his horse, and he might have received that sum by sending a servant, if he had one, to lead his horse.  He was under no obligation to come on any particular day and he could be told not to come until he was wanted. It was held that he was not a workman but an independent contractor.  *Chisholm* v. *Walker & Co.* 2 B. W. C. C. 261.

A man was employed by a road overseer of the county council to draw stones from a quarry and used for the purpose a horse and cart belonging to his father.  His wages were fixed at a certain sum per day.  There was some evidence of control on the part of the overseer of the county council.  There was evidence also that he was to get work now and then when there would be work to do, but there was no objection to his working for someone else when he was not wanted badly by the county council.  It was held that he was an employee.  *O'Donnell* v. *Clare County Council,* 6 B. W. C. C. 457.

Where a person was accidentally injured while hauling dirt for another, the injured person using his own team and wagon and being paid by the load, the employer retaining actual supervision and control of the work, the relationship of master and servant was held to exist.  *Van-Simaeys* v. *Cook County,* 201 Mich. 540.

A teamster was hired to haul coal in his own wagon for a fuel company. He represented the company in all the details of the work assigned to him and was subject to such control while the employment continued. It was held that under such circumstances it was immaterial whether he was paid for his work by the load or by the day or hour, and that he was an employee. *Waters* v. *Pioneer Fuel Co.* 38 Am. St. Rep. (Minn.) 564.

Where the evidence showed that the injured person was employed by the hour to haul material, using either his own wagon or that of the one who employed him, and that he could have been discharged at any time and also worked for others, it was held that he was an employee and not an independent contractor. *Columbia School Supply Co.* v. *Lewis,* 116 N. E. (Ind.) 1.

In *Foster* v. *Wadsworth-Howland Co.* 168 Ill. 514, it was held that the employer was not liable for the negligence of an independent contractor. It appeared that a school girl who was on her way to school was crossing a street in the city of Chicago when she was struck by horses attached to a wagon having the name of appellee and its place of business painted thereon. It also appeared that appellee had hired one Smiddie to do its hauling at a specified sum per week; that Smiddie owned two teams and wagons; that the driver of one of these teams was on the wagon when the team and wagon struck the injured girl. The court said (p. 518) : "The driver of the wagon which caused the injury was not an employee of appellee nor subject to its orders but was under the control and in the employ of Smiddie. Smiddie contracted to do the hauling, which contract necessarily carried with it the duty to employ such assistants as might be required. His relationship with appellee was therefore in the nature of a contractor rather than servant."

From the record before us it is manifest that the deceased gave all of his time to plaintiff in error; that he

was subject to plaintiff in error's orders and control as to the details of the work; that he could be discharged at any time; that he was employed by no one else; that his occupation with plaintiff in error was continuous; that he was required to be at the employer's place of business every day, just as any other employee; that he worked all day; that control was exercised over his movements and actions by telephone directions on his way to and from the delivery of freight; that there was no contract that he should accomplish any specified result; that his wagon was lettered with the name of plaintiff in error; that he conducted the work in every way the same as if the horse and wagon were owned by plaintiff in error; that his work was very simple and no control would ordinarily be required except to direct where and when he should haul the freight; that there was nothing in his contract or in the conduct of the work that indicated that the company in any way surrendered the right to control any part of the details of the work. It is clear from these facts that there was evidence from which the Industrial Commission might reasonably find that the deceased was an employee of plaintiff in error. We think this conclusion is in accord with the great weight of authority and the general rules distinguishing an independent contractor from an employee.

It is also argued by counsel for plaintiff in error that it is not under the Workmen's Compensation act. The record tends to show that no objections were seriously urged in the circuit court or before the Industrial Commission that the parties were not under the act. The case was twice heard on writ of *certiorari* in the circuit court. The first time the case was heard in the circuit court two objections were filed against the finding of the Industrial Commission. One was, that the deceased was an indepedent contractor and therefore plaintiff in error was not liable; and the other was, that a mistake had been made by the Industrial Commission as to the amount due under the stat-

ute, based upon the weekly wages of the deceased. These are the only objections filed. The circuit court found on that hearing that the deceased was not an independent contractor and that the Bristol & Gale Company was within the terms of the act and subject to its provisions but that the finding of the amount due was based on the erroneous construction of the Workmen's Compensation act as to the amount that should be due, figured from the weekly wage of the deceased, and for this last reason the circuit court ordered the decision of the Industrial Commission to be set aside and the cause remanded to the commission to hear further evidence as to the weekly wage and ascertain the proper amount that was due, based on the weekly compensation paid the deceased. It was the duty of the plaintiff in error to raise this question affirmatively, not only before the Industrial Commission but before the circuit court. It is apparent it did not do so from the affirmative showing in the record on the first writ of *certiorari* that was heard in the circuit court, and therefore, under the reasoning of this court in *Storrs* v. *Industrial Com.* 285 Ill. 595, and cases there cited, it must be held that the question cannot be raised here for the first time.

The circuit court, however, erred in entering a money judgment and ordering that execution issue. Under the holding of this court in *Baum* v. *Industrial Com.* 288 Ill. 516, and *Otis Elevator Co.* v. *Industrial Com.* 288 id. 396, the judgment of the circuit court must be reversed. The cause will be remanded, with directions to the circuit court to enter an order confirming the decision of the Industrial Commission.   *Reversed and remanded, with directions.*