(No. 14332.—Reversed and remanded.)

THE POCAHONTAS MINING COMPANY, Plaintiff in Error,
*vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN DE-
LAURENTI, Defendant in Error.)

*Opinion filed February 22, 1922.*

1. WORKMEN'S COMPENSATION—*injured employee cannot testify
as to per cent of loss of use of member.* An injured employee
may testify how his injuries affect him and as to his ability to use
injured eyes or limbs, but neither a lay witness nor an expert can
testify in direct terms that the employee has lost any stated per
cent of the use of any member, as such conclusion or finding must
be made by the Industrial Commission from the legitimate evi-
dence in the record.

2. SAME—*what may be testified to by expert witness as to ex-
tent of injury to eyes or limbs.* In a proceeding for compensation
for injuries to an employee's eyes and limbs, it is proper for an
expert witness to testify as to whether or not the employee's vis-
ion is normal or otherwise and as to the amount or extent of his
vision as disclosed by scientific tests or examination, and as to the
amount of movability or apparent use he has of an injured limb.

3. SAME—*employer is entitled to decision as to whether em-
ployee shall submit to offered treatment.* Under section 12 of the
Compensation act, if the employer tenders treatment to the em-
ployee for his injuries and the employee refuses to submit to the
same the employer is entitled to a decision of the Industrial Com-
mission as to whether the employee shall submit to the treatment
offered, and the commission should not confirm an award without
rendering such decision.

4. SAME—*when failure of Industrial Commission to make spe-
cific finding will not cause reversal.* The Industrial Commission
should pass upon all controverted questions of fact and make find-
ings in the record, but where no questions of law or fact are sub-
mitted in writing by either party the failure of the commission to
find specifically upon such questions is not ground for a reversal.

5. SAME—*when objection to jurisdiction of Industrial Commis-
sion for delay in filing stenographic report is waived.* An objec-
tion to the jurisdiction of the Industrial Commission on the ground
that the stenographic report or agreed statement of facts was not
filed within the time required by law is waived by entry of ap-
pearance and participation in the proceeding before the commis-
sion without objection; and the question cannot subsequently be

raised on review, either in the circuit court or in the Supreme Court. (*People* v. *Andrus,* 299 Ill. 50, explained.)

6. Same—*Industrial Commission exercises original jurisdiction in reviewing arbitrator's decision.* The review of an arbitrator's decision by the Industrial Commission, although it is neither a trial *de novo* nor simply a review of the record, is an exercise of original jurisdiction where the arbitrator's decision is contested, but the award of the arbitrator, like the report of a master in chancery, if not contested becomes final by its entry upon the records of the commission.

7. Same—*when Industrial Commission does not lose jurisdiction of case.* The Industrial Commission obtains jurisdiction of a particular case where the petition for review of the arbitrator's decision is filed in apt time, and such jurisdiction is not lost by subsequent delay in filing the stenographic report or agreed statement of facts if the parties appear without objection and participate in the proceeding.

Writ of Error to the Circuit Court of St. Clair county; the Hon. George A. Crow, Judge, presiding.

R. W. Ropiequet, and W. C. Ropiequet, for plaintiff in error.

A. W. Kerr, and J. A. Londrigan, for defendant in error.

George B. Gillespie, and L. V. Hill, for *amici curiæ.*

Mr. Justice Duncan delivered the opinion of the court:

On application for adjustment of his claim for injury in the mine of plaintiff in error, which he received on October 5, 1918, while employed as a shot-firer, John Delaurenti was on April 19, 1919, awarded by the arbitrator $15 per week for 22 weeks for temporary total incapacity, amounting to $330, all of which was then due and was paid by plaintiff in error. The arbitrator further found that he had sustained a permanent loss of twenty-five per cent of the use of each of his arms and a permanent loss of twenty-

five per cent of the sight of each eye, and allowed him a further sum for such loss of his arms and his sight of $15 per week for 150 weeks, and also found that the sum of $75 was then due for such loss of sight and use of his arms, and that the remainder thereof should be paid in weekly installments, beginning with April 26, 1919. On a review the Industrial Commission confirmed the award October 2, 1919, merely finding that in the opinion of the commission the findings and award of the arbitrator were correct. The commission declined to consider the petition of plaintiff in error to suspend the payment of such compensation for failure of defendant in error to accept medical treatment tendered him for his injuries, on the ground that under its rulings compensation must be paid up to the filing of such petition, which was not done. The record of the proceedings of the commission was quashed in *certiorari* proceedings before the circuit court of Bond county and the cause was remanded for further evidence. Further evidence was heard and the commission again declined to consider the petition to suspend the compensation of defendant in error, and declined to require him to be examined by the medical director of the commission, or by any physician selected by it, at the expense of plaintiff in error, and allow the report of such physician to be incorporated in the record as evidence. On July 2, 1920, the commission made the same findings and in the same words as in its previous findings and confirmed the award of the arbitrator. On June 23, 1921, the award of the commission was approved and confirmed by the circuit court of St. Clair county, and a writ of error was allowed by this court.

The evidence in the record bearing on the question of injury to the defendant in error's arms and eyes is in substance the following: He was thrown to the ground in said mine by an explosion, commonly called a "windy" or "blown-out" shot. He sustained burns all over his body. He testified that he lived in Pocahontas and was thirty-four

years old, and when injured was working as a shot-firer. Both of his arms were good arms before the injury. He could handle lumps of coal weighing 100 or 125 pounds and shovel coal as well as any man. He could handle and put up top-pieces and heavy timbers five feet long and a foot square when he worked as a timberman. The fire from the explosion left scars on his elbows. His head was swelled considerably from the burns and injuries. The back of his right hand was cracked by the burns and there was no change in the scar for four months. As a shot-firer he had no lifting to do and his arms would not bother him in shot-firing. His eyes were injured, also. He never wore glasses before he was hurt, but wears them now because he cannot see where he is going. He can see pretty near but not half as far as he could before he was burned and hurt. He does not know people twenty feet away without his glasses. He sees better with them. Before he was hurt he had good eyes but never had them tested before he was injured. He returned to the mine as timberman for two days, and also worked as a jackman, putting cars on the track with a jack when they got off, and worked there until he was discharged for reasons not connected with his injuries. Over the objections of plaintiff in error he was allowed to testify that he had lost forty per cent of the use of each arm and of his sight in both eyes. After the cause was remanded for further evidence he testified that he was not mining coal because his arm hurts him. He can't see without glasses, and they would get dusty in the mine. Before he was injured he could see to write. Now his eyes are not as strong as before, and he can't see to read or to sign his name without glasses. He can't see any better than when he appeared at the first hearing. If he takes a hammer and strikes hard with it his arm tingles and hurts him, and he is not strong in his arms, but says his arms are not stiff in any way. He has full use of the joints of his arms and at the elbows and at his shoulders and in his

301—30

fingers. He runs a soft-drink parlor and lifts cases of near beer with thirty-six bottles in them, but denies that he lifted half-barrels of beer and cakes of ice weighing near 250 pounds.

The testimony of three physicians was to the effect that all the burns on defendant in error were first degree burns except as to the arms, which were second degree burns. There was no swelling or discoloration of the eyelids. They moved normally up and down. There was a superficial scar on the outside of one lid and the inner lining was moderately chronically inflamed. The conjunctiva of the eye-ball (the mucous membrane lining of the eyelid and covering the anterior part of the eye-ball) in the lower half of the right eye showed numerous minute, dust-like particles. The eye-balls have normal positions and move normally in every direction. The cornea of the right eye showed, on examination with a microscope, a small, round, faint grayish opacity in the area of the pupil, and was an old opacity, probably due to a foreign body located there at one time. The cornea of the left eye showed no signs of disease or injury. The anterior chambers of both eyes were clear and normal. The irises of both eyes were normal in color and structure. The pupils were equal and normally round. The lens and vitreum were normal. The optic nerve and retina were intact. His eyes showed far-sightedness. The sight of both is equal, six-eighths, and with correcting lenses he had normal vision. He can see at twenty feet what the normal man can at twenty-four feet, caused by far-sightedness, which is not caused by burns or injuries but by faulty development. The burns all healed with new skin grown, and there are only a few superficial scars on each elbow. The muscles move and act freely. There are no adhesions of the skin to the muscles and no nerves involved underneath the skin or scars. The skin is freely movable over the tissues and over the muscles below, except in one little

spot over one elbow. There is nothing wrong with his eyes due to any burn or injury he received in the explosion. His arms are all healed and the injury to them was only temporary and not permanent in any degree.

The blood test of defendant in error showed 3 plus positive, which means a specific or syphilitic condition, specific. Defendant in error made no denial of having such a condition, and, in fact, did not reply to this testimony in any manner. Dr. F. J. Dietz, of St. Louis, Missouri, a physician and surgeon, recommended the salvarsan treatment or salvarsan injection for this syphilitic condition, and testified that he was satisfied that it would remedy specifically the trouble that defendant complained of in his eyes and arms, and also testified that there was no danger involved in giving the treatment by an experienced operator. He also stated there might be some danger of giving salvarsan in the hands of an inexperienced operator as well as to a subject who is not properly prepared. Salvarsan is an arsenic solution held in suspension, or a solution of arsenic and benzol, which is neutralized by adding a solution of water and sodium hydrate and acid. He testified that there are instances where apparent loss of sight of an eye was cleared up by the administration of salvarsan solution, by checking an atrophy of the optic nerve, which adds strength to the eye, but that it will not relieve or restore sight to an eye that is lost. On the hearing plaintiff in error made a distinct offer to defendant in error of the salvarsan treatment by Dr. Dietz, all expenses of hospital treatment to be paid for by plaintiff in error and without charge of any kind to defendant in error, which offer was refused by defendant in error, as heretofore stated.

Four residents of Pocahontas,—Emery A. Rea and Guy Rea, doing a delivery, garage and draying business, Wiley Paine, village marshal, and Arthur Clark, a coal miner,— testified, in substance, to seeing defendant in error handling large cakes of ice weighing from 250 to 300 pounds and

half-barrels of near beer weighing about 200 pounds, by unloading, unassisted, the beer and ice from the rear end of a dray. His manner of doing this was by pulling them out of the dray and easing them to the ground a distance of three or four feet and letting them drop most of the way so as not to be injured thereby. One of these witnesses testified positively that he saw defendant in error lift one of the half-barrels of beer and put it into an ice-box and then lift a second one and put it on top of the first half-barrel, unassisted, and that he then piled chunks of ice clear to the top of the ice-box and on top of the half-barrel, as high as five feet above the floor; that the pieces of ice were sawed from the larger pieces weighing 250 or 300 pounds, the large pieces being sawed into three or four smaller ones.

The commission, under the evidence in this case, was required to find as ultimate facts whether or not the defendant in error had sustained any permanent loss of the use of his arms or eyes, and if any, what per cent of such loss. We have frequently ruled that a lay witness, or even an expert, cannot testify in direct terms that an injured employee has lost any stated per cent of the use of an eye or of a limb, etc. It is proper for an injured employee to testify how and in what manner his injuries affect him, to detail his ability to see or to use his injured parts and his ability to work or to use his injured eyes or limbs, and in what manner such use affects him. It is proper for an expert to testify as to whether or not a man's vision is normal or otherwise and as to the amount or extent of his vision as disclosed by scientific tests or examination, and as to the amount of movability or apparent use he has of an injured limb, but he cannot answer in direct terms as to what per cent of loss he has sustained in the use of an eye or of a limb, as such conclusion or finding must be made by the commission from the legitimate evidence in the record.

Paragraph (*c*) of section 19 of the Compensation act authorizes the commission, at its own expense, to appoint a duly qualified, impartial physician to examine the injured employee and report to the commission. It further provides that the fee of the physician for such services, and the payment thereof, upon request of either the employer, the employee or the beneficiary affected, is subject to review and decision of the commission. Paragraph (*d*) of the same section provides that if any employee shall persist in insanitary or injurious practices which tend either to imperil or retard his recovery, or shall refuse to submit to such medical, surgical or hospital treatment as is reasonably essential to promote his recovery, the commission may, in its discretion, reduce or suspend the compensation. The employer is entitled to a physical examination of his employee by a physician without being compelled to pay the compensation awarded by the commission. (*Hafer Washed Coal Co.* v. *Industrial Com.* 293 Ill. 425.) Section 12 of the act requires the employee, if requested by the employer, to submit himself, at the expense of the employer, for examination by a duly qualified medical practitioner or surgeon selected by the employer, as provided in that section, and if the employee refuses so to submit himself for examination or unnecessarily obstructs the same, his right to compensation payments shall be temporarily suspended until such examination shall have taken place, etc. Plaintiff in error was entitled to a decision of the commission as to whether or not the defendant in error should submit to the treatment for his ailments that was tendered by plaintiff in error, and if it found that such treatment was reasonably essential to promote his recovery the commission should have entered an order that he submit to the same, and in case of his refusal should reduce or suspend the compensation. It seems to us that an examination of defendant in error by an impartial expert as to his physical injuries and condition, and his opinion upon the question of the efficacy of the pro-

posed treatment and desirability of the same, will be most valuable to the commission in making its decision as to whether or not defendant in error was acting within his reasonable discretion in refusing to submit to such examination and treatment, without having his compensation suspended or reduced. For the failure of the commission to properly consider and act upon such questions the judgment in this case will have to be reversed and the cause remanded for the further consideration of the commission.

When the incompetent evidence in this record, as above indicated, is eliminated, we do not think there is any evidence in the record that supports the finding that defendant in error has suffered twenty-five per cent of the loss of the use of his arms, but as this cause will have to be remanded for a further consideration, and as it may be desirable to introduce further evidence, we shall not further discuss this case upon the merits.

We have indicated heretofore in our decisions that the commission should pass upon all controverted questions of fact raised in the case and make findings in the record but that we would not reverse a judgment because of the fact that the commission had failed to do so. Paragraph (*e*) of section 19 of the Compensation act provides that in any case the board may, in its discretion, find specially upon any question of law or fact which may be submitted in writing by either party, whether ultimate or otherwise. No question whatever was submitted by plaintiff in error for such a finding, and it cannot, therefore, complain successfully of the character of the commission's finding in this case.

Defendant in error has presented the question in this court for the first time in this case that the decision of the arbitrator must be considered as final. This contention is based upon the proposition that the commission did not have jurisdiction to review the decision of the arbitrator or lost jurisdiction of the case by reason of the fact that plaintiff in error failed to file an agreed statement of facts or steno-

graphic report before the commission within ·the time re-
quired by the statute, and the decision of this court in the
case of *People* v. *Andrus,* 299 Ill. 50, is relied upon as sus-
taining his position.   The case just cited seems to be re-
garded by the attorneys in this case as in serious conflict
with some of the former decisions of this court, and be-
cause of the fact, or of the supposed fact, that our former
decisions are in direct conflict with each other, upon this
question it will be necessary for us to distinguish or ex-
plain them at some length.   We are aided considerably in
this matter by the able briefs filed by plaintiff in error upon
that question, as well as by a very exhaustive brief· filed
by counsel for W. K. Kavanaugh, president of the Coal Op-
erators' Association of the fifth and ninth districts of Illi-
nois, and others, as *amici curiæ.*

The arbitrator's award was filed with the Industrial
Commission April 19, 1919, and the petition for review of
the arbitrator's decision was filed April 25, 1919, within the
time required by the statute.   Plaintiff in error requested
and obtained four different extensions of time, for thirty
days each, in which to file the stenographic report of the
evidence before the arbitrator, and the stenographic report
was not filed until September 2, 1919.   The petition ·to sus-
pend compensation was filed with the Industrial Commis-
sion September 10, 1919.   Under the provisions of para-
graph (*b*) of section 19 of the Compensation act, as enacted
in 1915 and 1917, it was an absolute requirement that the
stenographic report should be filed with the commission
within twenty days after the receipt of a copy of the de-
cision or that an agreed statement of facts appearing be-
fore the arbitrator should be filed within the same time,
and if this provision was not complied with the decision of
the arbitrator should become the decision of the commis-
sion.   There was a proviso added that the commission for
sufficient cause might grant further time to file such steno-
graphic report or agreed statement of facts, not exceeding

thirty days. These same provisions of the statute continued in force under the acts of 1919 and 1921 without any material change, so far as the question raised in this case is concerned; but the act of 1921 added a further provision in paragraph (*e*) of the same section, that if a reporter does not for any reason furnish a transcript of the proceedings before the arbitrator in any case for use on a hearing for review before the commission, within thirty days of the filing of the petition for review, the Industrial Commission may, in its discretion, order a trial *de novo* before it in such case, upon application of either party. The foregoing provisions with reference to the time in which the stenographic report or the agreed statement of facts should be filed with the commission was also the law as enacted in 1913, except that in the proviso of the latter act it was provided that for sufficient cause shown the commission might grant further time in which to petition for review or to file such agreed statement of facts or stenographic report, and there was no limit placed upon the further time that the commission might give on cause shown.

As we said in the *Andrus case, supra,* the condition upon which the right of review by the commission depends is plainly declared, in terms which cannot be misunderstood, in all the acts aforesaid enacted since 1913, and a compliance with those terms is an absolute requirement of the statute that cannot be dispensed with if taken advantage of at the proper time but may be waived, as will be later shown. Only one extension of time is provided by this statute, and that extension is for thirty days, and the commission is without authority to make any further extension. Had defendant in error taken advantage of the failure of plaintiff in error to file the stenographic report in the time required by the statute and in the proper manner before the commission, his claim that the commission lost jurisdiction of the case would have been available to him. But this was not done. Defendant in error appeared before the

commission and participated in the contest before the commission until its conclusion, and he thereby waived all right to raise the question now before us, either in the circuit court or in this court, as the circuit court and this court have appellate jurisdiction of this class of cases and not original jurisdiction.

A review of an arbitrator's decision by the commission, as stated in the *Andrus case, supra,* is *sui generis,* since it is neither a review of the record made by the arbitrator nor a trial *de novo* but a combination of the two. The transcript of the record is to be reviewed by the commission, and the parties have the right to introduce further evidence, which, when taken and properly filed before the commission, must be also considered by it along with the evidence taken before the arbitrator. The jurisdiction of the commission to review the evidence before the arbitrator and to consider any further evidence properly presented to it is original jurisdiction as distinguished from appellate jurisdiction. As suggested by counsel for *amici curiæ,* the Industrial Commission appoints the arbitrator, and the arbitrator in his consideration of the case is but the agent of the commission, similar in character to that of a master in chancery or a referee in bankruptcy, so far as the character of the functions performed by the arbitrator is concerned. The award of the arbitrator, like the report of the master in chancery, may become final by its entry upon the records of the commission, and does become final if it is not contested, but if it is contested before the commission the jurisdiction of the commission to review is original jurisdiction as certainly as the action of the circuit court in reviewing or passing upon the master's report and entering final decree is original jurisdiction. We recognize the fact that the Industrial Commission is not a judicial body and performs no judicial functions, and have so held. *Savoy Hotel Co.* v. *Industrial Board,* 279 Ill. 329.

It is true, as suggested by counsel for plaintiff in error, that the legal term "jurisdiction," strictly speaking, applies only to courts, but for want of a more apt term to express what we mean, we have heretofore applied, and will contine to apply, the term "jurisdiction" to the Industrial Commission, by which we are to be understood as meaning the statutory authority given to it to hear and consider cases under the Compensation act. As the jurisdiction of the commission is original jurisdiction, in considering the question now before us the rules of practice applicable in circuit courts, which are courts of original jurisdiction, by analogy are applicable to the rules of practice before the commission, with respect, however, only to the particular question now in hand.

Counsel for defendant in error have presented this question upon the theory that the commission had no jurisdiction of the subject matter of this suit. This theory is entirely erroneous. The real question is whether or not the commission had jurisdiction of this particular case and of the parties to the suit when it made its decision. It obtained jurisdiction of the case when the petition for review was filed before it, as it was filed in apt time. It obtained jurisdiction of the parties by their appearance and participation in the contest, and for that reason never lost jurisdiction of the case if it had jurisdiction of the subject matter. "Jurisdiction of the subject matter does not mean simply jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which that particular case belongs." (7 R. C. L. 1029.) It cannot be doubted, and certainly will not for a moment be questioned, that the commission has jurisdiction or the statutory right and power conferred upon it to hear and determine the class of cases to which this case belongs. It may not have jurisdiction of the particular case in hand, or it may lose jurisdiction for a number of reasons not necessary now to be stated, but there can be no question

that it has jurisdiction of the subject matter of this case
and all other cases of like character in its class.  The rule
is, that where a court or a non-judicial body has no juris-
diction of the subject matter of a suit or controversy given
by the law or by a statute such jurisdiction cannot be con-
ferred by agreement of the parties or by waiver, and that
all acts performed by the court or such non-judicial body
where it has no jurisdiction of the subject matter are null
and void.  It is also true that where such jurisdiction of
the subject matter is wanting in a court or a non-judicial
body which has acted and made final decision therein, the
fact may be taken advantage of at any time on review in
a court having appellate jurisdiction.  These propositions
are elementary and have been so frequently decided by this
court we do not deem it necessary to cite our decisions.  It
is to be understood that in these statements we are talking
of courts and non-judicial bodies having original jurisdic-
tion as distinguished from appellate jurisdiction.

Under the decisions of this court it may be broadly
stated that where a court of original jurisdiction has juris-
diction of the subject matter of a suit, and the parties en-
ter their appearance before the court and contest their rights
before the court to a final judgment without objection in
any way to the right of the trial court to hear the cause
and to render such final judgment, it does not matter in
what manner the parties were brought before the court, and
on appeal or review by writ of error to an appellate court
or to this court the parties will be absolutely bound, so far
as the question of jurisdiction of their persons and of the
particular case asked to be reviewed is concerned.  Accord-
ingly this court has frequently held that in cases tried be-
fore the circuit court on appeal from a justice of the peace
or from some county or probate court, and wherein the
circuit court had jurisdiction of the subject matter, and
the trials are *de novo* in the circuit court, all objections to
process or service of process in such court, and all irregu-

larities in taking an appeal, are waived, if the case is by
appeal, unless such irregularities in process or in bonds or
in other proceedings on appeal are taken advantage of in
the circuit court and before any appearance is made in the
suit by the party questioning such irregularities. In fact,
where the circuit court has jurisdiction of the subject mat-
ter of a suit and exercises original jurisdiction in trying
and in deciding the case, on review by appeal or writ of
error it does not matter how the case got into the circuit
court, and the court of review will not entertain any ob-
jections to irregularities in process, or any other irregulari-
ties whatever in getting the case into the circuit court, unless
such objections were first properly raised in the circuit court
in apt time. Our decisions have gone so far as to hold that
even where a case tried in the circuit court was appealed
from another court having absolutely no jurisdiction of the
subject matter of the suit, if the trial in the circuit court on
appeal was *de novo* and is a case in which the circuit court
has jurisdiction of the subject matter, on review the irregu-
larity that the suit was first begun in a court without juris-
diction is waived unless properly raised in the circuit court.
The following are some of the many cases decided by this
court sustaining the propositions announced in this para-
graph: *Randolph County* v. *Ralls,* 18 Ill. 29; *Crull* v.
*Keener,* 18 id. 65; *Mitchell* v. *Jacobs,* 17 id. 235; *Jarrett*
v. *Phillips,* 90 id. 237; *Grier* v. *Cable,* 159 id. 29. Courts
in other jurisdictions have made rulings similar to those in
the cases just cited. (3 Corpus Juris, 1250, and notes.)

The rule that where a court of original jurisdiction has
jurisdiction of the subject matter of a suit and is given
jurisdiction of the proper parties by appearance it has the
power or jurisdiction to proceed in the cause to final judg-
ment, and that all objections to irregularities as to process
or as to the manner in which the suit was brought before
the court are waived if not properly raised in that court be-
fore appearance, has been many times applied by this court

to proceedings of the Industrial Commission on review of the award of an arbitrator.   In *Tribune Co.* v. *Industrial Com.* 290 Ill. 402, we held that the statutory provision that a claim for compensation must be filed in the time specified by the act was waived because not properly objected to before the commission before appearance, and there said: "The general rule seems to be, that while the defendant may make a *quasi* appearance for the purpose of objecting to the manner in which he is brought before the court, and, in fact, to show that he is not legally there at all, 'if he ever appears to the merits he submits himself completely to the jurisdiction of the court and must abide the consequences.' "   The same ruling was made, and for the same reason, in *Storrs* v. *Industrial Com.* 285 Ill. 595.   In *American Milling Co.* v. *Industrial Board,* 279 Ill. 560, the jurisdiction of the commission was questioned because the record did not show any notice was given to the employer and that the claim was not filed within six months after the accident, and the objections were held waived because not raised before the commission.   In *Chicago Packing Co.* v. *Industrial Board,* 282 Ill. 497, it was for the same reason held that the objection that the deceased was not engaged in an extra-hazardous occupation was waived and that the board had jurisdiction, because it was stipulated that the only question for decision before the board was whether the accident arose out of and in the course of the employment.   In *Bloomington, Decatur and Champaign Railroad Co.* v. *Industrial Board,* 276 Ill. 454, and in *Illinois Midland Coal Co.* v. *Industrial Board,* 277 id. 333, it was held that if at any time before the hearing the stenographic report is properly authenticated the statute is complied with and the board has jurisdiction.   Those two decisions are not in conflict with the decision in the *Andrus case, supra,* and the decisions of the court might have well been placed upon the sole ground that the objections were waived by not taking advantage of them before the Industrial Board, if that had

not been done, or upon the further ground that the statute of 1913 authorized the board to extend the time for the filing of such stenographic report, which authority for extension was not then limited by the statute. The same is true of the case of *Sulzberger & Sons Co.* v. *Industrial Com.* 285 Ill. 223, where several extensions of time were granted by the commission to file the stenographic report, each one being granted before the prior extension had expired, as that case was heard before the commission under the act of 1913. It was inadvertently said in that case that the case came under the act of 1915, but the decision was substantially correct and is not in conflict with the *Andrus case.*

We adhere to the ruling in the *Andrus case* as correctly laying down the law in every particular that was involved therein. It was sought in that case by *mandamus* proceedings to compel the commission to re-instate and hear a petition for review of the decision of the arbitrator. The commission had dismissed the case in question before it because the stenographic report was not filed until twenty-five days after notice of the decision of the arbitrator and without having obtained any extension of time for that purpose. The commission had therefore lost jurisdiction of the case, as an objection had been made to the commission in apt time for the dismissal of the proceedings, and there was therefore no waiver of the objection to the commission's taking jurisdiction. The commission could not, therefore, be *mandamused* to re-instate and hear the case, and that is the sum and substance of what the *Andrus case* decided. In the case now before us, as already shown, defendant in error did not raise any objection before the commission to its taking jurisdiction and deciding the case but appeared and participated in the contest until the commission had entered its final order. He therefore completely waived any right to raise the question that the commission had lost jurisdiction of the case, either in this court or in the circuit court.

For the reasons aforesaid the judgment of the circuit court is reversed and the cause remanded, with directions to remand the cause to the commission for further consideration, and with leave to the parties to introduce further evidence if they shall so desire.

*Reversed and remanded, with directions.*