(No. 14805.—Judgment affirmed.)

HENRY H. TIMMERMANN, Plaintiff in Error, *vs.* THE IN-
DUSTRIAL COMMISSION *et al.*—(ANNA ROHR *et al.* De-
fendants in Error.)

*Opinion filed December 19, 1922.*

1. WORKMEN'S COMPENSATION—*when death of employee from
pneumonia is result of an accidental injury.* Evidence that an em-
ployee, in the course of his employment, was injured in the chest,
head and left shoulder and died of pneumonia and influenza which
developed within two days after the accident, and that such an in-
jury would tend to produce pneumonia complications, is sufficient
to support a finding that the accident was the moving and control-
ling cause of the death.

2. SAME—*when tenant of grain elevator is liable as employer
under Compensation act.* A lessee of a grain elevator who operates
it as an independent business and is entirely independent in its
control and management is liable as employer, under the Compen-
sation act, for an injury occurring in the course of the employment
of a sixteen-year-old boy whom he hired to help handle wheat and
grain and do other necessary work in the operation of the elevator;
and it is not material that the lease required the lessee to sell all
his wheat to a certain milling company.

3. SAME—*when jurisdiction of lower tribunals cannot be ques-
tioned in Supreme Court.* A party who has appeared before the
arbitrator, the Industrial Commission and the circuit court and has
taken part in the proceedings before those tribunals without objec-
tion to their jurisdiction cannot raise the question of jurisdiction
for the first time in the Supreme Court.

WRIT OF ERROR to the Circuit Court of Clinton county;
the Hon. F. R. DOVE, Judge, presiding.

H. J. C. BECKEMEYER, and CHARLES H. HOLT, for
plaintiff in error.

FRANK F. NOLEMAN, JUNE C. SMITH, and ANDREW J.
DALLSTREAM, for defendant in error Anna Rohr.

HUGH V. MURRAY, EDWARD C. KRAMER, RUDOLPH J.
KRAMER, and BRUCE A. CAMPBELL, for defendant in error
the Trenton Milling Company.

Mr. Justice Carter delivered the opinion of the court:

William Rohr, the son of defendants in error, Frank Rohr and Anna Rohr, a boy sixteen years old, was employed to help handle wheat and grain and do other work at an elevator operated by Henry H. Timmermann. He went into a bin near the cog-wheels and shafting to get a rope, and his younger brother, who was not employed there, threw on a clutch and started up the machinery. William's sweater caught in the machinery and he was thrown and received a cut in the back of his head, his left shoulder and chest were bruised, pneumonia and influenza developed, and he died eleven days after the accident. A claim was made before the Industrial Commission by his parents and an allowance made by the arbitrator against the Trenton Milling Company. The application as against Timmermann was dismissed. On the hearing on review the Industrial Commission set aside the arbitrator's award but found in favor of the parents of the deceased, increasing the amount of the award that was allowed by the arbitrator. The cause was taken to the circuit court of Clinton county, and that court found that the Trenton Milling Company was not legally responsible for the accident but that Timmermann was responsible, and entered a finding against Timmermann that the parents should be allowed the minimum compensation payable under the provisions of paragraph (*c*) of section 7 of the Workmen's Compensation act, and he was ordered to pay to the mother and father $3.85 per week for a period of 428 weeks and $2.20 for one week, payment to commence on the eighth day after the injury. The proceeding is now here on a writ of error to review the judgment of the circuit court.

It appears from the record that the Farmers' Elevator is a corporation owning an elevator at Beckemeyer, in Clinton county; that an agreement was entered into between Timmermann, the Trenton Milling Company and the Farmers' Elevator wherein it was agreed, among other things, that

in consideration of the commissions, rentals and payments mentioned therein, the elevator company leased and rented to Timmermann the grain elevator situated on the Baltimore and Ohio railroad right of way at Beckemeyer, and the storage bins, machinery and engines, at $22 a month, and providing that the Trenton Milling Company was to receive all the wheat bought by Timmermann, at a certain price based on the St. Louis prices. The same agreement, with certain changes not material here, was entered into for separate years. Timmermann conducted other business at the elevator, such as trading in corn and feed, with which the Trenton Milling Company had nothing to do. It appears also from the record that the Trenton Milling Company furnished money to Timmermann to buy wheat which the contract covered, which was deposited at a local bank, and Timmermann signed the checks for money paid out, on check blanks marked "T. M. Co.," the money being in Timmermann's name, out of which he paid expenses, such as wages and other items, and at the end of the month he was compensated on the basis of two cents a bushel commission for handling the wheat. Timmermann had the entire charge of the elevator, the men who worked there doing any work he told them to do, of any character pertaining to his business there.

The evidence tends to show that after the accident William Rohr, the young man who was injured, came into Timmermann's office in the elevator building and sat down; that he said he was not hurt, but Timmerman told him to go home; that Rohr had worked at this place about two months at the time of the accident and received $12 per week wages. The accident occurred on November 8, 1918. Dr. Joseph Loewy, being called by one of the family, visited the boy at his parents' home on the day of the accident and found the patient excited, coughing very hard and complaining of various pains. The doctor found the evidences of the injury heretofore mentioned and the patient very

sensitive to a physical examination. The doctor testified that the second day after the accident he first noticed pneumonia symptoms and continued to treat the boy until the eleventh day, when he died.

Some question is raised in the briefs as to whether the injuries caused by the accident were the cause of the death or whether it was independently caused by pneumonia and influenza. While Dr. Loewy's testimony is not clear and positive on all points on this question, we think the death certificate signed by him fairly summarizes his views on that question. Therein he stated that compression of the brain and secondary pneumonia were the immediate cause of death, and that the patient undoubtedly had influenza also, as all the pneumonia at that time was mixed with influenza germs. The death certificate used the words, "Toxemia [pneumonia] injury to the brain," and while the doctor stated two or three times that he was not expert enough to tell the exact results of the injury, as to how much the pneumonia was the effect, he did testify that the symptoms of pneumonia developed about two days after the injury and that at the time of the injury the patient's vitality was low, and that under those circumstances an injury would tend to produce pneumonia complications, also in view of the fact that there was a pneumonia epidemic in that locality at that time, and that he would say that the injury was responsible for the development of the pneumonia; that the injury to the head was the direct cause of the paralysis symptoms, from which the patient continued to get worse, and that the brain injury to a very large extent caused his death. While the coroner, Dr. Morony, was called in before the death, he said that he was called in so late he could not tell anything about what caused the death, and his testimony had no material bearing on this question. That the accident was the moving and controlling factor in causing the death of Rohr we think is borne out by the evidence in the record, and we believe that the Industrial

Commission properly found that it was the cause of the death. This holding is supported by the reasoning of this court in *Lumaghi Coal Co.* v. *Industrial Com.* (*ante*, p. 475.)

It is further insisted that Timmermann should not be held responsible under the contract heretofore referred to between him and the Trenton Milling Company and the Farmers' Elevator for this accident. Taking the contract between these three parties as a whole, together with the admitted method of conducting the business in which Timmermann was engaged, the conclusion necessarily follows that Timmermann did not conduct the business as a subordinate agent or employee of the milling company but was entirely independent in the control and management of the elevator, and that he ran an independent business, having merely a contract with the milling company as to the sale of wheat. In our judgment it is not material whether the Farmers' Elevator may or may not have made it a condition of the rental of its elevator to Timmermann that he sell all his wheat to the milling company. Timmermann hired the deceased, directed all his work, and from all that appears from the record the milling company may never have known that he was employed by Timmermann. Under the reasoning on similar questions in *Bristol & Gale Co.* v. *Industrial Com.* 292 Ill. 16, *LeMay* v. *Industrial Com.* 292 id. 76, *Franklin Coal Co.* v. *Industrical Com.* 296 id. 329, and cases cited in those decisions, it must be held that Timmermann was Rohr's employer, and should be held liable, under the Workmen's Compensation act, for the accident.

Some question is also raised as to whether the proper notice was given to Timmermann under the statute as to the accident or demand upon him for compensation. Frank Rohr, father of the deceased, testified that he made demand upon Timmermann on December 17, 1918, and asked him what he was going to do about the accident, when Ben Kauling was present, and that Timmermann said the boy did not die from the injury. The record tends to show that

the father on two other occasions told Timmermann that he expected compensation. On January 8, 1919, he wrote Timmermann a letter, in which he stated, "As you know, I am expecting compensation for the death of my boy while working for you." We think the record shows clearly that demand was properly made within the time required by statute and that notice was given to Timmermann.

It is also insisted by counsel for Timmermann that he was not properly notified of the various proceedings before the arbitrator, the Industrial Commission and the circuit court of Clinton county. It appears from the additional abstract filed in this cause, that while the hearing was being carried on before the commission, Timmermann and his attorney, Beckemeyer, appeared before the commissioner, and it was stated before him at this time that they agreed to have the evidence and the finding before the commissioner written up in a certain way and he made no objection to the jurisdiction and the hearing at that time. It also appears from the record of the hearing before the circuit court that it was stipulated that a judge at the close of the November term might enter the finding and judgment in vacation as of the date the same was actually entered, and that the finding and judgment, when entered, should have the same force and effect as if entered during term time, subject to the right of either party to appeal or prosecute a writ of error therefrom, and nothing was said by Timmermann or his counsel at that time which questioned the jurisdiction of the circuit court to hear and pass on the matter. Under these circumstances and under the rulings of this court in former decisions Timmermann cannot raise in this court the question of the jurisdiction of the arbitrator, the Industrial Commission or the circuit court to pass on the question of his liability in this proceeding. *Pocahontas Mining Co.* v. *Industrial Com.* 301 Ill. 462; *O'Donnell Teaming Co.* v. *Industrial Com.* 301 id. 479; *Paradise Coal Co.* v. *Industrial Com.* 301 id. 504.

On the record we think Timmermann must be held liable, under the Workmen's Compensation act, for the accident, and we find no error in the record that would justify the reversal of the circuit court's finding.

The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*