(No. 3301—

James Caldwell, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed August 16, 1939.*

R. C. Harmon, for claimant.

John E. Cassidy, Attorney General; Glenn A. Trevor, Assistant Attorney General and Sveinbjorn Johnson, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

As originally filed, claimant in this case sought an award of Three Hundred Sixty ($360.00) Dollars for the partial loss of use of the first phalange of the first finger on his right hand, while in the course of his employment as a laborer at the Physical Plant at the University of Illinois. Under an amended complaint filed October 5, 1938, claimant increased the amount of his demand to Seven Hundred Twenty ($720.00) Dollars and alleged that he had lost the permanent and complete use of the first finger of his right hand, or "at least 25 per cent" loss of use of the entire right hand. The amended complaint was filed after the taking of evidence in the cause and was apparently the result of the testimony of Dr. Christie who testified he had examined claimant, and that he had almost a total loss of use of the finger in attempting many occupations. The record in this case consists of the original and amended complaints; the report of the University Committee on accident compensation for employees; reports of Doctors J. Howard Beard and John B. Christie as

part of said University Committee's report; a transcript of testimony taken at the University of Illinois; and the respective Statements, Briefs and Arguments of claimant and respondent. The record shows that claimant had been employed as a certified laborer at the Physical Plant of the University since May 27, 1936; that on January 11, 1938 about 3.30 P. M. he was doing some miscellaneous work in connection with the steam distribution system of the University of Illinois in the Materials-testing Laboratory. While closing the door of a freight elevator he caught the first finger of his right hand between the doors, severely mashing the first phalange of the finger. He gave immediate notice to his employer and was given medical and hospital service, the expense of which has been paid by respondent.

Claimant resumed work on January 24, 1938 and was paid the sum of Forty-eight ($48.00) Dollars for the time he was disabled. At the time of the injury and for more than one year prior, his earnings had been Sixty (60c) Cents per hour for eight hours' work per day, six days per week. At the time of the accident and now claimant has three children under the age of sixteen years, all residing with claimant, their ages being respectively seven (7), nine (9), and fourteen (14) years. His annual wage figures One Thousand Four Hundred Forty ($1,440.00) Dollars on the basis of $4.80 per day for three hundred (300) days and the average weekly wage figures $27.70.

Claimant having been injured on January 11th and having resumed work on January 24th, his temporary total disability extended through the 12th to the 23rd inclusive, or a matter of twelve days. As the temporary total disability did not extend for a period of thirty days, he was only entitled to compensation for temporary total disability for the time beginning on the 8th day of such temporary total incapacity. There should therefore be deducted from any amount found to be due him for specific loss, the sum of Thirty-four and 63/100 ($34.63) Dollars heretofore overpaid him for non-productive time on the temporary total disability compensation. Claimant was entitled to a maximum of Eighteen ($18.00) Dollars per week compensation since he had three children under the age of sixteen years at the time of the injury, which entitled him to compensation at the rate of sixty-five (65) per cent of his average weekly wage instead

of fifty (50) per cent. We have repeatedly held that the amount of overpayment for temporary total disability is allowable as a credit to the employer when called upon to pay specific loss or partial or total permanent disability, and such rule would apply in the present case. As above suggested, it was alleged in the orginal complaint herein filed that claimant had "severely mashed the end of the first joint of said finger and suffered the complete loss of the first phalange thereof." Such was his own conclusion as to his injury at the time he filed his complaint. After hearing Doctors Beard and Christie express their opinion as to the percentage of disability which he had suffered, he concluded that he should amend his complaint and ask for partial loss of use of the entire finger. Dr. Beard and Dr. Christie each testified to a percentage of loss, the former stating that in his opinion such loss amounted to sixty-five (65) or seventy (70) per cent of functioning of the finger. Dr. Christie testified that the finger is atrophied and that there is no use of the distal joint and that the finger is approximately fifty (50) per cent weak in the middle interphalange joint as far as functioning is concerned. Dr. Christie stated his final conclusion to be that claimant probably has only ten (10) per cent use of the index finger. The claimant himself testified (P. 4 of the Transcript) that he was doing the same kind of work which he did before this accident, and that the finger doesn't seem to interfere with the kind of work he is doing at all, and that it doesn't handicap him in any way. He was asked if he was able to make any use of this finger in connection with his work, and he stated "It doesn't seem to bother me much; it doesn't handicap me in any way." He was also asked, "Do you use that finger?" and he replied, "To a certain extent. I can hold a pencil or pick up things or hold a pencil and write with it." In answer to the question, "Is there any more use in that finger than if you had no finger there at all?", he replied, "I believe there is. I would rather have it like it is than no finger at all." Claimant also stated that if the work in which he was engaged required that the finger be in a flexible condition so it could be flexed at will, it would be a handicap as he cannot close the finger all the way down to the hand.

The Courts have held that an injured employee may testify how his injury affects him and as to his ability to use

injured eyes or limbs, but neither a lay witness nor an expert can testify in direct terms that the employee has lost any stated per cent of the use of any member, as such conclusion must be made by the Industrial Commission—or the Court— from the legitimate evidence in the record. (*Pocahontas Mining Company* vs. *Industrial Comm.*, 301 Ill. 462.)

It has also been held that the loss of all four fingers where there is no loss or impairment of the hand itself, does not constitute the loss of a hand, and the award is limited to that for the fingers themselves. (*Sykes* vs. *Industrial Comm.*, 314 Ill. 326.)

Dr. Beard testified as to the injury to the finger that the latter was severely mashed and cut down to the first joint; that the distal half of the finger was mashed back as far as the second joint; that the joint between the middle and distal phalanx is practically functionless, and that the joint between the middle and proximal phalanx is about fifty (50) per cent impaired.

Under Section 8 (e-2) of the Workmen's Compensation Act, if claimant had suffered the entire loss of the first finger he would be entitled to Eighteen ($18.00) Dollars per week for a period of forty (40) weeks. Under Section 8 (e-17) he is entitled to such proportion of forty (40) weeks as the proportion of loss of use of his index finger bears to total loss. Under Section 8 (e-6) the loss of the first phalange is considered the loss of one-half of the finger.

The claimant has not lost the first phalange of his finger. When the doctors looked at the finger and told him they would take it off, claimant insisted that they dress the finger and leave it on, and his testimony shows that he now uses the distal end of the finger to advantage in writing and picking up articles. We find from the record that the claimant has not lost the complete use of the first phalange of his index finger; that on the other hand there appears to be a partial loss of use of said finger from the second or middle joint to the distal end. The bone of the finger was not severed but the tendons were severed and were sewed back together. The injury, according to Dr. Christie, had taken place right in the distal inter-phalange joint, but because of the laceration and the injured tendon, there is some effect upon the entire distal half of the finger. The conclusion of the Court, from an examination of the record, is that an award of fifty (50) per

cent loss of use of the finger should be made to claimant; that is, an award of Eighteen ($18.00) Dollars per week for twenty (20) weeks, or Three Hundred Sixty ($360.00) Dollars. From this amount should be deducted the over-payment that has heretofore been made to him for non-productive time, in the sum of Thirty-four and 63/100 ($34.63) Dollars, making a net award of Three Hundred Twenty-five and 37/100 ($325.37) Dollars. The full amount of such award has accrued and is payable at the present time.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved July 3, 1937 (Session Laws 1937 Page 83), and being subject further to the terms of an Act entitled "An Act making appropriations to the Auditor of Public Accounts for the disbursement of certain moneys until the expiration of the first fiscal quarter after the adjournment of the next regular session of the General Assembly" (Senate Bill 123 as amended) approved July 8, 1939;—and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided for by the foregoing Acts.