The Commissioners of Inlet Swamp Drainage Dis-
trict, Appellees, *vs.* Ira Cooper, Appellant.

*Opinion filed June 22, 1916.*

Drainage—*what does not justify annexation of land under sec-
tion 58 of the Levee act.* Lands which are naturally dominant to
the lands of a drainage district cannot be annexed to the district,
under section 58 of the Levee act, where the owner has done noth-
ing since the organization of the district to connect the lands with
its ditches or drains, and where the evidence fails to show that
the lands are benefited, within the meaning of the statute.

Appeal from the County Court of Lee county; the
Hon. John B. Crabtree, Judge, presiding.

Gardner & Gardner, and John E. Erwin, for appel-
lant.

Henry S. Dixon, George C. Dixon, and Grover W.
Gehant, for appellees.

Mr. Chief Justice Craig delivered the opinion of the
court:

Appellees, the commissioners of Inlet Swamp Drainage
District, in Lee county, filed their petition in the county
court of that county to annex certain lands to said dis-
trict,—among other tracts the west half of the northeast
quarter of section 29, in Alto township, in said county,—
under section 58 of the Levee act. They alleged as grounds
for such annexation that the owners of the lands sought to
be annexed had made connection with the ditches or drains
within the district or that said lands are or may be bene-
fited by the work of such district. Certain of the land
owners, including appellant, appeared and filed objections
to the petition, among others that none of said pieces or
parcels of land have been or now are connected with any
ditches or drains within the district, nor are said several
pieces or parcels, or any of them, benefited, nor will they

be benefited, as a result of the existence of the ditches of said drainage district or the work done or proposed to be done on such ditches as originally planned; that all of the several pieces and parcels of land are fully and completely drained by natural water-courses and drains, and that the work of the said drainage district is not necessary to said lands for the purpose of drainage thereof. Evidence was heard on the objections, and the court made a personal examination of the lands petitioned to be annexed to said district and entered an order dismissing the petition as to certain lands and ordering that certain other lands, including the west half of the northeast quarter of said section 29, (the land of appellant,) be annexed to the district. Appellant has appealed to this court, assigning as error that the order is contrary to the law and the evidence.

The only error relied upon by counsel for appellant in their argument is that the evidence is not sufficient to justify the order of the court in annexing the land of appellant under section 58 of the Levee act.

From the evidence it appears that the Inlet Swamp Drainage District was organized in 1887 and ditches were dug in said district in 1888. The district included about 30,000 acres of land, taking in portions of Alto, Viola, Bradford, Lee Center, Willow Creek and Reynolds townships, in Lee county. The district is oblong in shape, and is about ten miles long from southwest to northeast and about four miles wide. The land of appellant is situated just outside the northeast corner of the original district. The drainage of the district is toward the southwest. The lands in the district are servient to the land of appellant ordered to be annexed to the district. Among other ditches in the district, one known as the Cooper lateral extended to a point half a mile south and half a mile west of the southwest corner of appellant's land, and it was proposed to clean out and deepen and extend this Cooper lateral to a point on or near the south line of said land. Several years prior to

the organization of the drainage district, Ira Cooper, the father of appellant, who then owned the land, dug a ditch along the south line of the land to connect with a ditch running north and south half a mile west of the land in question, called the Mitten ditch, which had also been dug by private owners. Both of these ditches have become partially filled and are in disuse. Almost twelve years ago a railroad was built across the western part of the land from north to south, and in times of excessive rainfall the water from the land runs into the ditch along the south line and from there into a ditch along the railroad, but generally it is absorbed in the ground and disappears before reaching the railroad. When the Cooper lateral was dug it was extended east, so that the Mitten ditch emptied into it at the east end. It is not shown by the evidence in the record in this case or claimed on behalf of appellees that appellant, since the organization of the drainage district, has made any connection with the drainage ditches of the district or that he has done anything by way of digging artificial ditches or tiling so as to drain his land into the ditches of the drainage district. The only claim to support the judgment and order of the lower court is that the land of appellant will be benefited.

Section 58 of the Levee act (Hurd's Stat. 1913, p. 940,) provides: "Any land lying outside of the drainage district as organized, the owner or owners of which shall thereafter make connection with the main ditch or drain or with any ditch or drain within the district as organized or whose lands are or will be benefited by the work of such district, shall be deemed to have made voluntary application to be included in such drainage district."

There is a conflict in the evidence, that on behalf of the petitioners tending to show that the land of appellant and the other lands which it was proposed to annex to the district were benefited by the drainage district and system of drainage ditches and would be further benefited by the ex-

tension and cleaning out of certain of the ditches and drains of the district, while that on behalf of the appellant tended to show that his land was not benefited by the original drainage district and would not be benefited by the proposed extension. The evidence on behalf of appellees was that of one of the drainage commissioners and of two engineers who had looked over the land which it was proposed to annex to the district, who testified that in their opinion the land in question was benefited and would be benefited by reason of the work of the drainage district. There is no dispute as to the character of the land in question or the surroundings. It is composed of a black loam on the surface with a sub-soil of porous clay, with sand and gravel under that. There are no ponds or bodies of water standing on the land, and after a rainfall, even when large quantities of water are thrown on the land, the water percolates through the soil and runs off rapidly. The land, in fact, has good sub-drainage through the porous clay and underlying sand and gravel. The only way in which the land will be benefited by the drainage district, according to the witnesses for appellant, is that the drainage ditches in the district will tend to draw off the water that is in the ground and thus facilitate the sub-drainage of the land in question through the sub-soil. Some ten witnesses on behalf of appellant who were residents of that vicinity and familiar with the situation of the land and the surrounding territory and with drainage operations in that vicinity, some of them going back and describing conditions during a period of nearly fifty years, testified, in substance, that while there were at times some wet spots on portions of the land in question, caused by water cast thereon from lands to the east, the land had been continuously in cultivation and had always raised good crops; that it raised just as good crops before as after the drainage district was organized and in operation; that the land did not need artificial drainage; that the water which in times of excessive rainfall or floods

found its way into the ditch originally dug by Cooper on the south side of his land flowed west and disappeared in the ground, and that no water from the land apparently found its way into the ditches of the drainage district; that it was their opinion that the land had never been benefited in any way by the work of the drainage district and would not be benefited by its proposed extension.

To justify the connection of lands with a drainage district, under section 58 of the Levee act, there must either be a connection by the owners of the lands sought to be annexed or benefits to such lands. (*Gar Creek Drainage District* v. *Wagner,* 256 Ill. 338.) In *People* v. *Barber,* 265 Ill. 316, it is said on page 323 of the opinion: "In order to establish that a tract of land lying outside a drainage district has been connected by the owner with the ditches of the district it is not sufficient to merely show that the waters from that tract ultimately pass into and through the district ditches, but it must further appear that an artificial ditch has been constructed leading from that land directly into the district ditch or into some ditch which has been theretofore artificially connected with the drainage ditch. Such is, in effect, the substance of our previous decisions upon this question. (*People* v. *Drainage District,* 155 Ill. 45; *People* v. *Wild Cat Drainage District,* 181 id. 177; *Gar Creek Drainage District* v. *Wagner,* 256 id. 338.) The proof fails to show that any of the relators' lands have been so connected, and the authority of the drainage commissioners to annex the lands in controversy to the district was therefore not established."

The burden was upon appellees in this case to prove the benefit to the land of appellant, and according to the weight of the evidence there is no such benefit as is claimed.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*