(No. 25351.—)
THE COMMISSIONERS OF UNION DRAINAGE DISTRICT NO. 1, Appellees, *vs.* THE COMMISSIONERS OF UNION DRAINAGE DISTRICT No. 6, Appellants.

*Opinion filed February 21, 1940—Rehearing denied April 3, 1940.*

ROBERT J. BURDETT, for appellants.

ALBERT H. KRUSEMARK, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The parties to this cause represent two adjoining drainage districts organized under the Farm Drainage act. Appellants are commissioners of district No. 6, and appellees are commissioners of district No. 1. The drainage ditch of district No. 6 empties into the main ditch of district No. 1. The question involved is what, if any, portion of the cost of cleaning and widening the main ditch of district No. 1, should be borne by district No. 6. Appellees filed a petition in the county court of Will county under section 6 of the act relating to adjoining drainage districts (Ill. Rev. Stat. 1939, chap. 42, par. 224) praying the court to fix such amount. Judgment against appellants for $574.61 was entered, and they have prosecuted this appeal.

The two districts have been in existence over twenty-five years. District No. 1 comprises 5377 acres. District No. 6 lies north of district No. 1 and contains 1022 acres. Its main ditch runs south and empties into the main ditch of district No. 1 at right angles, 8100 feet above the outlet of the latter.

The main ditch of district No. 1 is 11,775 feet long. Two lateral ditches are, respectively, 10,673 feet and 21,600 feet long, aggregating 44,048 feet. The ditch of district No. 6 is 13,800 feet long; 5010 cubic yards of material were excavated from the main ditch of district No. 1 below the junction where the ditch from district No. 6 enters it. East of that junction, 1080 cubic yards were excavated from the main ditch of district No. 1. On account of the widening of the ditch below the junction it was necessary to increase the length of three bridges spanning the ditch. Appellees claim that appellants should contribute to the cost of those three items.

Appellants' first claim is that the land in district No. 6 would drain whether the ditch was cleaned or not, and that, therefore, it is not liable because it received no benefits. They called as witnesses three farmers residing in the district, two of whom were commissioners, and G. L. Lippincott, who follows the business of civil engineering. They testified that in their opinion the land in district No. 6 was not benefited, because district No. 6 is higher than district No. 1 and that the water would flow whether the ditch was cleaned or not. Lippincott testified that the land in the southernmost part of district No. 6 is 3½ feet higher than the land where the ditch joins the ditch of district No. 1, and the grade of the ditch is about 4½ feet higher; that the lowest point in district No. 6 is 1700 feet north of the junction; that before the ditch of district No. 6 was installed, there were about 200 acres of swamp land in the district, and said that if the ditch did not have an outlet, "That would be too bad." The farmer who was not a com-

·missioner testified that part of the land in district No. 6 is pretty flat and low and would be swamp land if there was no ditch.

Edgar T. Mulford, civil engineer of district No. 1, testified that the ditch from district No. 6 discharges 36 cubic feet per second under ordinary heavy rainfall; that because it comes into the main ditch of district No. 1 at a right angle, it was necessary to widen the main ditch of district No. 1 above that point as had been done originally, in order to prevent holding back the water in the latter ditch; that parts of the main ditch were filled in and parts washed out; that in cleaning and widening it, the depth at the junction was left 2½ feet lower than before the work was done and its outlet was six inches lower, but its slope was no less than the original ditch and the water from the entire district would flow faster, including the water below the outlet from district No. 6; that the two districts are in the same watershed; that before the work was done the ditches were of the same elevation and the flow from district No. 6 was retarded; that, without observing the flow of water or the use of instruments, he was unable to tell whether the land in district No. 6 is higher than that in district No. 1, and if there was no outlet into district No. 1 all of the territory in district No. 6 would be flooded; that he determined the benefits to district No. 6 at $649.21; that he took the total lineal feet of the ditch in district No. 1, and, by applying the estimated cost of excavation arrived at a unit cost of 19 cents per foot; that by applying the unit price to the 8100 feet of ditch below the junction of the two ditches, he arrived at a cost of $1539, and that using a ratio of benefits between the two districts of five to one resulted in $308 as the share of district No. 6 for excavation below the junction. For the 1080 cubic yards in widening the ditch above the junction he applied the contract price of $15.95 cents per yard, arriving at a charge of $172. For lengthening the bridges the cost was $846.06, of which he

applied one-fifth, or $169.21 to district No. 6, aggregating the total charge of $649.21.

The county surveyor testified the factors taken into consideration by the engineer of district No. 1 in arriving at the figures were correct from an engineering or surveyor's standpoint, but he did not agree as to the amount of benefits. One of the commissioners of district No. 1 testified the ditches at the junction were filled with dirt to the extent that the water hardly moved, and district No. 6 was benefited by cleaning the ditch, because if it was all filled up the water could not run at all. The other commissioner testified there was an island at the junction and water from both ditches which just gradually ran around it. The ditch from district No. 6 was filled considerably with dirt and willows and the bottoms of both ditches were level; that district No. 6 was benefited by cleaning the ditch because it takes the water off the low places.

The testimony is somewhat in conflict, but we are unable to say the finding that district No. 6 is benefited is against the manifest weight of the evidence. In our opinion the evidence preponderates in favor of appellees. Therefore, the judgment on that issue will not be disturbed. *City of Chicago* v. *Marsh,* 238 Ill. 254.

The 1080 cubic yards in widening the ditch above the junction was occasioned solely because the ditch from district No. 6 came in at right angles and, otherwise, would not have been necessary. The cost of that item was therefore attributable to that district. The lengthening of the bridges below the junction was merely an incidental cost of widening of the ditch from which district No. 6 received a benefit, and that district's portion of the cost was properly chargeable to it. Section 65b of the Farm Drainage act (Ill. Rev. Stat. 1939, chap. 42, par. 65a) requires commissioners to construct or reconstruct a bridge over an open ditch in each enclosed field. Appellants' contention that there is no evidence that the bridges were within enclosed

fields is without merit. That section imposes a duty on the commissioners and has nothing to do with apportioning costs between adjoining districts.

The only basis of the five to one ratio used by the engineer was the comparison of acreage in the two districts. The land in both districts is on the same watershed, with a comparably similar slope, and if there was no outlet to the ditches of district No. 6, the land in both districts would be flooded. The acreage basis was a proper factor to be used in determining benefits.

Applying the unit contract price of 15.95 cents per cubic yard to the total excavation of 40,500 yards, yields $6459.75, which, divided by 44,048, total length in feet of ditch excavated, gives a unit price of 14.66 cents per lineal foot. This unit price applied to the 8100 feet south of the junction makes $1187.46, one-fifth of which is $237.49. If the trial court adopted the figures of $172 for widening the ditch above the junction and $169.21 for lengthening bridges, which were proper, and being so, we must assume it did adopt them, subtracting the sum of these two items from the total amount of the judgment leaves $233.40 for excavation below the junction, which is comparable to the above calculation of $237.49. The trial court evidently used both the acreage ratio and the cost price of 14.66 cents per lineal foot as factors in determining the benefits apportionable to district No. 6. We think these were proper factors.

Five thousand and ten cubic yards were excavated below the junction, which, at the unit price of 15.95 cents per yard would produce $781.06, one-fifth of which is $156.21. Appellants contend that, in any event, no more than that amount could be assessed against them as benefits from excavation, because district No. 6 is not benefited by any excavation above the junction. The testimony shows that cleaning all the ditches in district No. 1 caused all the water to flow faster. It is a matter of common knowledge

352

that faster flow would tend to lessen the deposit of silt in all the ditches, including the main ditch below the junction. Faster flow and less silt in the ditch below the junction obviously allow the water from district No. 6 to get away faster, and thus it receives a benefit from cleaning all the ditches. Under these circumstances, using only the cost per yard of excavation in that part of the ditch below the junction would not reflect the benefits received by district No. 6. Although the engineer used the estimated unit price of 19 cents, the judgment comports with a computation at the actual cost price per foot. There is nothing in the record tending to show that, as argued by appellants, the trial court took one-sixth of the total benefits as a criterion for the portion of benefits to appellants.

The judgment of the trial court is justified by the evidence and is affirmed.

*Judgment affirmed.*