(No. 30156.—

OKAW DRAINAGE DISTRICT, Appellee, *vs.* TWO MILE SLOUGH DRAINAGE DISTRICT *et al.*, Appellants.

*Opinion filed Sept. 18, 1947—Rehearing denied November 18, 1947.*

HENRY I. GREEN, ORIS BARTH, LAWRENCE R. HATCH, and JOSEPH W. CORAZZA, all of Urbana, for appellants.

BUSCH & HARRINGTON, of Champaign, and JOHN J. BRESEE, of Urbana, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Two Mile Slough Drainage District in Champaign County, hereinafter referred to as "Two Mile" or "Two Mile District," and its commissioners, hereinafter referred

to as appellants, appeal from a judgment of the county court of Champaign County, in the sum of $31,750, in favor of Okaw Drainage District in the counties of Champaign and Douglas, hereinafter referred to as "Okaw" or appellee, based upon a statute hereinafter referred to which permits an adjoining drainage district to collect a proportion of the cost of work done for benefits, where benefits are shown, as the result of improving the outlet of another district.

The factual situation and what was done are not in dispute and the question for decision is what, if any, benefit Two Mile District derived from the work done by Okaw in straightening, deepening and widening its ditch. This ditch below Two Mile District is its outlet. Two Mile defended upon the ground that work done by Okaw does not benefit it at all. On hearing before the court and at the close of Okaw's testimony and at the close of all of the evidence, Two Mile and its commissioners, who were defendants, moved for judgment. These motions were denied, and judgment was entered against Two Mile, as above stated, and this appeal followed. Many questions are raised concerning the competence of evidence and other procedural matters. To note them all would require an opinion of unreasonable length. They have all been considered. We will first treat the main issue of the case, which is that the judgment lacks necessary support in the evidence.

Two Mile, which was organized as a drainage district in 1888, is approximately 12 miles long north and south, and from 3 to 4 miles wide east and west, containing in the neighborhood of 25,000 acres. Through approximately the center of the district is a valley varying from a few rods to a half mile in width. In the bottom of this valley or depression a ditch was excavated by Two Mile, known as Two Mile Slough ditch. The banks of the depression rise abruptly forming a valley through which flood waters

run, emptying into the Kaskaskia river, also called the Okaw river, at or near the southwest corner of Two Mile. The fall in said Two Mile valley is gradual from the north end of the district to its outlet where it empties into the Okaw in section 33 in Sadorus township in Champaign county, about 700 feet north of the north line of Garrett township in Douglas county. The land in said Two Mile to the east and west of said Two Mile Slough valley is high ground but in it are depressions which held surplus water, and the several owners of land tiled their lands either directly into Two Mile Slough valley or into lateral ditches or drains which drained into Two Mile Slough valley. Up to the time of the hearing, Two Mile had spent approximately $277,000 in improving the efficiency of its district and providing drainage from tile laid in the lands of the owners in the district. The last expenditure of an appreciable amount for an improvement of the Two Mile District was in 1928. The valley through which Two Mile Slough runs is subject to overflow in times of excessive rains, but the run-off water is confined to the natural valley through which Two Mile Slough runs. This valley is used for pasture, timber and waste land, and very little, if any, of it is, or has been, under cultivation. Prior to the work done by Okaw, practically none of the cultivated land in Okaw was subject to overflow of flood waters of Two Mile Slough.

Okaw District was organized about the year 1903. It lies west and south of Two Mile District. The outlet of Two Mile ditch drains by natural flow into the Okaw basin. The land in the Okaw north of the outlet of Two Mile varies from a mile to two miles in width, and is 8½ miles long. The land of Okaw, below the outlet of Two Mile, extends north and south about three or four miles and is about four miles in width. The district contains about 19,000 acres. North of Okaw District is the Kaskaskia Special Drainage District, containing about 11,000 acres,

and north of the latter-named district is the Fountain Head Water Shed, containing about 19,000 acres. The testimony shows that there are approximately 25,000 acres which drain through Fountain Head but are not a part of that district. All of this territory drains into Okaw District north of Two Mile outlet. The Okaw river, like Two Mile ditch, runs through a valley varying in width from approximately a quarter to a half mile in width. The banks of the valley rise from a gradual to a quite abrupt slope and the land to the east and west of the valley is high ground which requires tile drainage to take water off low spots so that same can be cropped. There is ample fall from the high ground to the Okaw valley to provide proper drainage, and the high ground is tiled from outlets either into the Okaw valley or into laterals which drain into the Okaw. Like the valley of Two Mile, the valley in Okaw District is not cultivated but is used for pasture, timber and waste land. None of the prairie land in Okaw District is subject to overflow. It is only the Okaw valley, through which the Okaw river flows, and the valley of the Two Mile Slough that are subject to overflow in times of excessive or flood rains. Okaw's engineer, testifying as a witness for it, stated that at no point from below the outlet of Two Mile into the Okaw to the southern boundary of Okaw District was the valley in the Okaw more than a quarter of a mile wide.

In the spring of 1943, during and after heavy rains, water spread over the valley of the Okaw from high ground to high ground and was estimated to have been fifteen feet deep. None of the prairie ground in either Two Mile or Okaw districts was overflowed.

After the organization of Okaw District in 1903, that district, in 1904 and later, completed the construction of about 12½ miles of open ditch within the boundaries of the district, which generally followed the course of the Okaw river, from the southern boundary of Okaw Dis-

trict north to the point on the division line between Okaw District and Kaskaskia Special Drainage District.

On June 23, 1944, the county court of Champaign County, by its order, authorized Okaw to extend its main open ditch downstream from its former terminus, for a distance of approximately 10,000 feet along the general course of the Okaw river to a point where the river is crossed by a bridge commonly called "How Bridge," in Garrett township, Douglas county, and to straighten, deepen and widen the channel of the main ditch of Okaw District within its boundaries. This included reconstruction of the side slopes of the main open ditch to provide a slope of one and three-quarter feet horizontal to each one foot vertical on either side of the ditch, and the clearing of trees and brush along the course of the ditch, as shown by the maps, profiles and specifications. On February 9, 1945, Okaw District entered into a contract to have the work done according to plans and specifications. The total cost of the entire work was $158,783. The excavation from the Howe Bridge upstream to the place where Two Mile discharges its water into Okaw consisted of the removal of 532,229 cubic yards of soil, for which the contractor was paid 13 cents per cubic yard, or $69,189.77. The county court confirmed an assessment of $132,300 for benefits to the lands of Okaw District. How the balance was paid is not disclosed.

On August 9, 1945, Okaw filed, in the county court of Champaign County, its petition under the act in regard to adjoining drainage districts. (Ill. Rev. Stat. 1945, chap. 42, par. 219 *et seq.,*) to have that court determine the amount which Two Mile District should contribute toward the cost of the extra work as benefits to Two Mile and the owners of land within that district, and to require such contribution. After hearing, the trial court entered judgment against Two Mile District in the sum of $31,750. This appeal is from that judgment.

Two Mile has assigned fourteen errors but confined its argument almost entirely to the failure of Okaw to show by competent evidence that Two Mile was benefited by the work done by Okaw District.

Section 2 of the act under which this proceeding was instituted provides: "That whenever any drainage district heretofore, or that may hereafter be organized under any law of this state, constructs, enlarges, extends or improves its ditch, ditches, drains, levees, or pumping plant or plants, * * * within or beyond its boundaries in the manner provided by law, so as to benefit the lands or any part thereof, within any adjoining drainage district, such district so benefited shall be liable to the first mentioned district for the just proportion of the cost of such work or improvement and the maintenance, operation and repair thereof, based upon the amount each district will be benefited thereby; and the fact that the district constructing the work or improvement herein mentioned, is organized and operating under a different law of this state from that under which the other district so benefited is or was organized or is operating, shall not preclude a recovery hereunder by such district making such improvement." Ill. Rev. Stat. 1945, chap. 42, par. 220.

Two Mile insists that Okaw failed to prove any benefit to Two Mile District by the work done by Okaw in 1945 in its district. On the other hand, Okaw insists that, from all evidence, the trial court was justified in the findings and judgment rendered.

To support the judgment, Okaw stresses the testimony that the lands of Two Mile are no longer drained through natural drainage but are largely dependent upon the ditch dredged and straightened through its district and laterals and many miles of tile laid through the fields and attached or laid in the main open ditch up to and including 1928, and that little or no work of any consequence had been done in that district since that time; that its ditch was

heavily silted in the lower four miles at the time Okaw District did the work in 1945; that Okaw ditch, particularly below the junction of Two Mile outlet into Okaw ditch, was crooked throughout some of its course, contained a growth of willows, trees and many bars and was also heavily silted immediately below the outlet of Two Mile, whereby the hydraulic capacity of the ditch in Okaw District had been reduced by approximately 50 per cent; that in many places the ditch was only fifteen feet wide; that after the work was done by Okaw, the channel below the outlet of Two Mile had a fifty-foot bottom and was ten feet deep, and that the effect of the work was to increase the flow of water in both districts. Okaw also argues that the lands in both districts were subject to overflow in times of heavy rains and particularly stresses the testimony of several witnesses of flood damage in Two Mile District in years prior to 1945, the year the work was done by Okaw. Stress is also put upon the testimony of Charles R. Olson, an experienced engineer and soil expert, who testified he took a number of soil borings, that he determined from an examination of the land shown in Okaw District in exhibits marked 49 and 50, that the field of corn shown in exhibit 49 would make 35 bushels per acre in the low-water area as against 60 to 65 bushels in the better ground. The land shown in exhibits 49 and 50 is located in the northeast part of Two Mile District south of the Wabash railroad and west of Tolono. It is at least two miles east of Two Mile Slough ditch. There is no testimony showing that high water in Two Mile ditch in any way affected or caused excess moisture which reduced the yield of corn in the low spots concerning which the witness testified.

Okaw also insists that its exhibit 12, a part of a report, plans, estimates and specifications of Godfrey Sperling, engineer, filed in the county court of Champaign County February 13, 1942, estimating it was necessary for Two

Mile District to expend approximately $30,000 to repair tile drains, and outlets, to clean out laterals and to remove obstructions in the main ditch due to inadequate maintenance and repair, shows conclusively that work done in Okaw District was necessary to proper drainage in Two Mile and that this is an element in its evidence showing benefits to Two Mile by reason of the work done by Okaw.

Evidence was introduced concerning the condition of the outlet of Two Mile ditch into Okaw. This consisted of testimony and photographs of that outlet before and after the additional work was completed, with the water in Okaw at approximately the same stage before and after the additional work was completed. The photograph, petitioner's exhibit 27, taken March 13, 1945, before the work was done, shows no bar in Okaw river, and exhibit 27A, taken September 16, 1945, after the work was completed to and above Two Mile outlet, shows the formation of a bar immediately below the outlet of Two Mile which virtually fills the Okaw ditch with silt above the stage of water therein. Witnesses were not in harmony as to the cause or effect of this bar. Some testified that it was composed of loose silt and would wash out with each freshet, but none testified that even though the bar did wash out it would not again form. Witnesses for Okaw, in testifying to benefits to Two Mile District by reason of the improvement, admitted they had not been on the farm land of Two Mile District, but had observed and gauged the height of the water from the several bridges crossing Two Mile ditch and that none of them had walked along the ditch or the farm lands in that district to see what the effect of the work was.

The testimony as to the stage of water in both Two Mile and Okaw river, at the junction of Two Mile with Okaw, is in dispute. Some witnesses said the flood water receded faster after the work was completed but did not testify to any specific damage to crops in Two Mile Dis-

trict, while witnesses for Two Mile testified their crops were not damaged by high water either prior to or since the additional work was completed. Some testified that in their opinion, based upon their observations, the water in Two Mile Slough ditch in the spring of 1946 was higher than it had been in previous years, and while their crops were not damaged by overflow or high water, they believed the water did not drain off their land through the drain tile as rapidly as it did prior to the completion of the additional work. The oral and documentary evidence is that the fall in Two Mile Slough District over a distance of approximately 11½ miles was 2.59 feet per mile. The blueprint in evidence, showing the proposed construction of the open ditch in Okaw, shows the slope or fall in the bottom of the ditch after the additional work was completed below the outlet of Two Mile Slough and that the ditch was 50 feet wide, 10 feet deep, with side slopes of 1¾ feet horizontal to 1 foot vertical, with a 10-foot berm on each side and at the top of the slope, and with a spoil bank 10 feet high on each side of the outer edge of the berm.

There is a dispute in the evidence between engineer Goodell, who designed the plan for the additional work, and engineer Doland, a witness for Two Mile, as to whether the ditch with its slopes, berms and spoil banks will carry the flood waters from Two Mile District faster and be beneficial to Two Mile and the landowners within said district, or is of no value or benefit and may be a detriment or injury to Two Mile District and the landowners therein, the witness for Okaw claiming such benefit exists and the witness for Two Mile declaring just as emphatically that no such benefit has accrued.

It is conceded that prior to the additional work by Okaw, contribution for which it seeks from Two Mile, the flood waters of both districts spread out from bluff to bluff or bank to bank but did not overflow the prairie

land in either district. There is testimony, which is not refuted, that in 1946 the heavy rains filled the new Okaw ditch and overflowed the spoil banks, thus causing water to spread out over and flood the entire Okaw valley as it did in the course of nature, previous to the opening of the new ditch.

It is admitted by engineer Goodell in his testimony that, to get for the lands in the upper portion of the Okaw Drainage District the full benefit of work done below the Two Mile Slough main ditch, it was necessary to carry that ditch on up to them and to their tile outlet, and that it might have been true to some extent, if it had not done the work above the Two Mile outlet into the Okaw district, that the Two Mile water would have gotten away better because the water would not have come down the Okaw above that outlet with the same speed and in the same amount. He stated that, on the other hand, there would have been other conditions existing which, in time of flood, the waters being held back above Two Mile Slough, would have caused the flooding for a longer period at the mouth of Two Mile. He testified that, when he designed the work to be done above the outlet of Two Mile, the purpose in so doing was to benefit the landowners in the area of Okaw above that improvement.

Okaw insists that the work done by it created a faster flow of water not only in its ditch but in the ditch of Two Mile which had a tendency to lessen the deposit of silt in all ditches, including the main ditch below the junction of Two Mile into the Okaw which enabled the water from Two Mile ditch to get away faster, thus showing a benefit to Two Mile District by reason of cleaning all the ditches. In support of that contention, appellee relies upon what this court said in *Comrs. of Union Drain. Dist. No. 1 v. Comrs. of Union Drain. Dist. No. 6,* 373 Ill. 347, at pages 351 and 352: "It is a matter of common knowledge that faster flow would tend to lessen the deposit of silt in all

the ditches, including the main ditch below the junction. Faster flow and less silt in the ditch below the junction obviously allow the water from District No. 6 to get away faster, and thus it receives a benefit from cleaning all the ditches." The question here, however, is whether there is in this record testimony from which this court can determine that the requirements of the act relied upon for recovery have been met. What the just proportion of the cost of work done by Okaw District is, granting (which Two Mile denies and the record does not clearly show) that some benefit has accrued, cannot be determined from this record. It is admitted that no estimate of benefit to Kaskaskia Special District or Fountain Head, both of which discharge their drainage water into the Okaw ditch above Two Mile outlet, was taken into consideration. Engineer Goodell admitted the extension of the ditch in Okaw District, north to the Wabash railroad, was a benefit to Kaskaskia Special and Fountain Head districts, and that the increased volume of flow in the Okaw ditch above the outlet of Two Mile outlet had a tendency to retard the flow of water from Two Mile ditch into the Okaw. To determine what, if any, benefit Two Mile should pay for, benefits to Kaskaskia Special and Fountain Head should also be considered. Only thus could the just proportion of the cost as a benefit to Two Mile be determined.

The only testimony as to the amount of benefit to Two Mile is that of engineers Goodell and Olson. Goodell testified that in determining the benefits, which he estimated to be $66,000, he started with the fact that 58 per cent of the area of Two Mile and Okaw districts was in Two Mile and, proportioning that acreage to the total cost of all the work up to the outlet of Two Mile into Okaw and not considering any other factor, Two Mile's benefit would equal $55,500; that using the same percentage of the total cost, $158,783, would make Two Mile's proportionate share $92,000; that he did not mean to say that Two Mile should

pay 58 per cent of the cost of the work done by Okaw above Two Mile Slough outlet, but he believed it should be charged with some proportionate share of the cost somewhere between $55,500 and $92,000, which would be Two Mile's proportionate share of the cost of the work done by Okaw, and, not weighing those figures in any way due to the greater need of drainage, the greater area of land in Two Mile District that is subject to flooding by reason of the open ditch overflow and the like, the benefit to Two Mile would be at least $66,000. He further stated that those were all of the elements that went into his computation; that he did not have a mathematical formula that he followed to get the figure of $66,000, but that he merely stated his opinion; that area is one basic factor and that he did not figure or consider areas of Kaskaskia Special and Fountain Head districts which drain into Okaw ditch above Two Mile outlet. On cross-examination, he admitted that in arriving at $66,000 as a benefit to Two Mile he used all the cost from Two Mile outlet down to the Howe Bridge and apportioned it solely between Two Mile and Okaw District. He further admitted that the watershed of Fountain Head is 25,000 acres and Kaskaskia Special District about 11,000 acres.

Goodell further testified that his only observation of flood waters in Two Mile was by driving the highway and crossing the bridges that span Two Mile ditch. He further testified he made no specific observation of Two Mile District or of the crops therein in 1946, and that he thought there was some slight crop damage in the Hubbard land in 1946. He thought the water got over there, but whether it was from backwaters of the main ditch or from surplus water from the east, he did not determine. He further admitted on cross-examination that his statement as to flood conditions in the upper part of the Okaw District during June, 1946, was based on what he had been told. Olson used the same factor of comparative acreage plus

some observations regarding soil conditions and water levels and placed the amount to which Okaw was entitled at $64,000 to $65,000. This was the only testimony tending to show the amount to which Okaw was entitled for benefit received from work done by Okaw. In *Comrs. of Union Drainage Dist. No. 1* v. *Comrs. of Union Drainage Dist. No. 6*, 373 Ill. 347, this court said, after the statement above quoted, "Under these circumstances, using only the cost per yard of excavation in that part of the ditch below the junction would not reflect the benefits received by district No. 6."

Counsel for appellants strongly urge that this evidence invaded the province of the jury by stating the ultimate fact, which was for the jury only to determine, and this is true. Such is not unlike a doctor testifying to what damages the plaintiff in a personal injury case should be awarded. While benefits in a case such as the one before us cannot be determined by any exact formula, this does not excuse erroneous invasion of the province of the jury by stating the number of dollars that should be awarded without any basis in fact for such evidence. That was not only without the province of the witnesses who showed no special qualification to give such testimony, but carried them into a field reserved exclusively for the jury. This testimony was erroneously admitted. As there was no other evidence offered on the subject, the record stands without such evidence. See *Central Illinois Public Service Co.* v. *Industrial Com.* 302 Ill. 27; *Pocahontas Mining Co.* v. *Industrial Com.* 301 Ill. 462; *People* v. *Paisley,* 288 Ill. 310; *Lyons* v. *Chicago City Railway Co.* 258 Ill. 75, and cases therein cited.

Okaw contends that its exhibit 12, being a report of an engineer, dated February 11, 1942, to the commissioners of Two Mile, detailing the necessary work to be done in that district, at an estimated cost of $30,000, together with the testimony of witnesses that the increase in velocity of

the water in the enlarged ditch dug by Okaw, especially in times of heavy rainfall or of floods, accelerates the flow of water in Two Mile ditch, which increased flow tends to prevent silting and sedimentation in the outlet and in the lower reaches of Two Mile, and shows the existence of benefits to Two Mile District. Though this contention be sound, it does not assist, without testimony of improvement in the drainage, in fixing liability of Two Mile, much less the just proportion of the cost of the work that Two Mile should bear. That appellant district permitted its ditches to become clogged with silt and growth of vegetation, thereby retarding the effectiveness of its drainage system, was no concern of Okaw, and could only affect Okaw by lessening the amount of water which would in a given time descend upon that district. Unless Okaw by competent evidence can show that the work done by it resulted in benefit to Two Mile, the statute under which this action was brought can not avail Okaw. The only testimony concerning benefits by removing the accumulation of silt in the lower end of Two Mile Ditch is that of Okaw's witness Goodell, who testified to his observation on a personal visit to the outlet of Two Mile. He stated that a deposit of silt two or three feet in depth was washed out for a distance of 800 feet, and within the next 100 feet he found the silt in the bottom of the ditch so soft that he could not wade it and had to return. On the other hand, appellants' evidence tended to show that in high water the current in Two Mile was less than in Okaw. Such would necessarily indicate that the waters in Two Mile were being held back.

Appellee's exhibits 41 to 44, inclusive, are photographs of flood waters taken in 1943 near the outlet of Two Mile slough into Okaw ditch. They show both Okaw river and Two Mile Slough at flood stage. From the undisputed testimony that Okaw Valley south or below the outlet of Two Mile slough varied in width from a quarter to a half mile

with high banks, and that flood waters never overflowed the banks, it does not seem credible that the digging of a ditch without fall, 10 feet deep, 50 feet wide at the bottom, with a slope of 1½ feet horizontal to 1 foot vertical, with a berm 10 feet wide on each side of the slope and spoil banks 10 feet high on the outside of the berm, would result in carrying as much flood waters as the Okaw valley carried before the ditch was deepened and widened, but Okaw's claim of benefits is based upon engineer Goodell's testimony that the water got away with greater velocity after the construction of the improvement in 1945. Goodell testified that the ten thousand feet of excavation below the southern boundary of Okaw District, (which Two Mile contends had a natural fall of 3.8 feet,) was constructed on an 0-level or with no fall. Two Mile contends this construction might have been a benefit to Okaw but not to Two Mile, and this seems to be borne out by testimony that the construction of the new ditch with what the engineers called a frictional coefficient of .026 was designed to and had the effect of permitting flood waters to flow at a greater rate at designated high surface levels in Okaw above Two Mile's conjunction with it than it would flow in Two Mile, and that the object of the new construction was to permit the waters in Okaw to get away faster. The evidence of Two Mile is that the effect of such ditch construction was to back up the waters in Two Mile and retard its flow, rather than increase it. This condition, Two Mile insists, was proved by the testimony of its witnesses that in flood time in 1946 they threw sticks in both Okaw and Two Mile and that the sticks in Okaw were carried down stream faster than they were in Two Mile.

It is apparent that Okaw tried this case upon the theory that because Two Mile is in the same watershed as Okaw, the enlarging, straightening and deepening of the Okaw was therefore a benefit to Two Mile and, under the statute, Two Mile should contribute to the cost of construc-

tion. That such is not the deciding factor in cases of this kind has been settled. (*Comrs. of Sangamon and Drummer Drainage Dist.* v. *Houston,* 284 Ill. 406; *People ex rel. Wilcox* v. *Barber,* 265 Ill. 316; *Comrs. of Inlet Swamp Drainage Dist.* v. *Cooper,* 274 Ill. 77.) The statute under which this action was brought requires that the work done in one district be of benefit to the lands or any part thereof within the adjoining district before the adjoining district can be required to contribute to the cost of the work done. Even though the preponderance of the proof in this record be that the work done benefited Two Mile, Okaw is not entitled to contribution unless there be competent evidence as to what that benefit was so that the same can be apportioned. Mere evidence of the existence of some benefits, even though such evidence preponderates on that issue, does not justify a judgment fixing the proportion or amount of cost that the adjoining district should bear.

The foregoing covers, in general, the testimony of Okaw in an endeavor to establish the just proportion of the cost, which it contends Two Mile should bear. Before a valid judgment can be entered against Two Mile for benefits by reason of work done by Okaw, it is incumbent upon the Okaw District to establish by competent evidence, not by guess, not only the existence of such benefits but also the amount appellant district was benefited in proportion to the work done by Okaw District. This we find Okaw failed to do. The finding of the trial court was contrary to the manifest weight of the evidence on that issue.

The judgment of the county court of Champaign County is reversed and the cause is remanded.

*Reversed and remanded.*